Aura C. Arms, Admx.

*v.*

Frederick Ayer *et al.*

*Opinion filed October 24, 1901—Rehearing denied December 5, 1901.*

1. Constitutional law—*duties of courts in construing statutes.* It is the duty of courts to so construe statutes as to uphold their constitutionality and validity, if it can reasonably be done; and if the proper construction is doubtful, the doubt should be resolved in favor of the validity of the law.

2. Same—*Fire-escape act of 1897 does not delegate judicial or legislative power to the inspector of factories.* That the inspector of factories is given a discretion as to the number, location, material and construction of fire-escapes on buildings does not render the Fire-escape act of 1897 unconstitutional, as delegating legislative or judicial power to the inspector.

3. Same—*title to Fire-escape act of 1897 is sufficiently explicit.* The title to the Fire-escape act of 1897, being "An act relating to fire-escapes for buildings," sufficiently expresses the subjects treated of in the act, since the constitutional provision requiring acts to embrace but one subject, which shall be expressed in the title, is complied with where the general object of the act is so expressed.

4. Same—*Fire-escape act of 1897 is not local or special.* The act of 1897, relating to fire-escapes, (Laws of 1897, p. 222,) is not unconstitutional, as being a local or special law.

5. Fire-escapes—*act of 1897 construed as to who is bound to erect fire-escapes.* Under the Fire-escape act of 1897 the duty of equipping buildings with fire-escapes rests primarily upon the owner of the building, and this duty, and the liability consequent upon its non-performance, are not dependent upon the serving of a notice by the inspector of factories to erect such escapes.

Appeal from the Superior Court of Cook county; the Hon. Jesse Holdom, Judge, presiding.

The appellant sued appellees in the superior court of Cook county in case, to recover damages for unlawfully causing the death of her intestate. The declaration is very voluminous, consisting of ten counts, to each of which the defendants interposed a general and special demurrer. The circuit court sustained the demurrer and gave judgment for the defendants. This appeal is from that judgment.

The cause of action in each count of the declaration is based upon an alleged violation of the Fire-escape act, approved May 27, 1897, (Laws of 1897, p. 222,) and the general demurrer goes to the validity of the act. It is as follows:

"Sec. 1. That within three (3) months next after the passage of this act all buildings in this State which are four or more stories in height, excepting such as are used for private residences exclusively, but including flats and apartment buildings, shall be provided with one or more metallic ladder or stair fire-escapes attached to the outer walls thereof, and provided with platforms of such form and dimensions, and such proximity to one or more windows of each story above the first, as to render access to such ladder or stairs from each such story easy and safe, and shall also be provided with one or more automatic metallic fire-escapes, or other proper device, to be attached to the inside of said buildings so as to afford an effective means of escape to all occupants who, for any reason, are unable to use said ladders or stairs; the number, location, material and construction of such escapes to be subject to the approval of the inspector of factories: *Provided, however*, that all buildings more than two stories in height, used for manufacturing purposes, or for hotels, dormitories, schools, seminaries, hospitals, or asylums, shall have at least one such ladder fire-escape for every fifty (50) persons, and one such automatic metallic escape, or other device, for every twenty-five (25) persons, for which working, sleeping or living accommodations are provided above the second stories of said buildings; and that all public halls which provide seating room above the first or ground story shall be provided with such numbers of said ladder and other fire-escapes as said inspector of factories shall designate.

"Sec. 2. All buildings of the number of stories and used for the purposes set forth in section 1 of this act which shall be hereafter erected within this State shall,

upon or before their completion, each be provided with fire-escapes of the kind and number and in the manner set forth in this act.

"Sec. 3. It shall be the duty of said inspector of factories to serve a written notice, in behalf of the People of the State of Illinois, upon the owner or owners, trustees or lessees, or occupant, of any building within this State not provided with fire-escapes in accordance with the requirements of this act, commanding such owner, trustee, lessee or occupant, or either of them, to place or cause to be placed upon such building such fire-escape or escapes as provided in section 1 of this act, within thirty (30) days after the service of such notice. And the grand juries of the several counties of this State may also, during any term, visit or hear testimony relating to any building or buildings within their respective counties for the purpose of ascertaining whether it or they are provided with fire-escapes in accordance with the requirements of this act, and submit the result of their inquiry, together with any recommendations they may desire to make, to the circuit court, except in Cook county, and to the criminal court of Cook county, and said court may thereupon, if it find from the report of said grand jury that said building or buildings is or are not provided with a fire-escape or escapes in accordance with this act, cause the sheriff to serve a notice or notices upon the owner, trustee, lessee or occupant of such building or buildings.

"Sec. 4. Any such owner or owners, trustee, lessee, or occupant, or either of them, so served with notice as aforesaid, who shall not, within thirty (30) days after the service of such notice upon him or them, place or cause to be placed such fire-escape or escapes upon such building as required by this act and the terms of such notice, shall be subject to a fine of not less than $25 or more than $200, and to a further fine of $50 for each additional week of neglect to comply with such notice.

"Sec. 5. The erection and construction of any and all fire-escapes provided for in this act shall be under the direct supervision and control of said inspector of factories, and it shall be unlawful for any person or persons, firm or corporation to erect or construct any fire-escape or escapes, except in accordance with a written permit first had and obtained and signed by said inspector of factories, which permit shall prescribe the number, location, material, kind and manner of construction of such fire-escape.

"Sec. 6. Any person or persons, firm or corporation, who shall be required to place one or more fire-escapes upon any building or buildings, under the provisions of this act, shall file in the office of said inspector of factories a written application for a permit to erect or construct such fire-escape or escapes, which application shall briefly describe the character of such building or buildings, the height and number of stories thereof, the number of fire-escapes proposed to be placed thereon, the purposes for which such building or buildings is or are used, and the greatest number of people who use or occupy or are employed in such building or buildings above the second stories thereof at any one time.

"Sec. 7. That an act entitled 'An act relating to fire-escapes for buildings,' approved June 29, 1885, in force July 1, 1885, be and the same is hereby repealed.".

The first count is as follows: "That the defendants, upon and for a long time prior to March 16, 1898, were owners of a certain seven-story brick building located on the west side of Wabash avenue, between Adams street and Jackson boulevard, in the city of Chicago, county of Cook, and State of Illinois, commonly known as 215, 217, 219 and 221 Wabash avenue, in said city, county and State; that said building was used for manufacturing purposes; that by reason of the statute approved May 27, 1897, in force July 1, 1897, it became the duty of the defendants to provide said building with one or more me-

tallic ladder or stair fire-escapes attached to the outer walls thereof, and provided with platforms in such form and dimension, and in such proximity to one or more windows of each story above the first story, as to render access to such ladder or stairs from each such story easy and safe, and also to provide said building with one or more automatic metallic fire-escapes or other proper device, to be attached to the inside of said building, so as to afford an effective means of escape to all occupants who for any reason are unable to use the ladder or stairs, and to provide the number, location, material and construction of such escapes, subject to the approval of the inspector of factories; but the plaintiff avers that the defendants have never filed in the office of said inspector of factories a written application for a permit to erect or construct such fire-escape or escapes, and that by reason of the statute it became the duty of the defendants to apply for a permit, according to said statute, and to provide at least one ladder fire-escape for every fifty persons, and one such automatic metallic fire-escape or other device for every twenty-five persons for whom working accommodations were provided in said building above the second story thereof; that at the time aforesaid, and for a long time prior thereto, working accommodations were provided for more than one hundred persons above the second story of said building, and that more than one hundred persons were working in said building above the said second story for a long space prior thereto, and that thereby it became the duty of the defendants to provide said building with not less than two ladder fire-escapes and not less than four automatic metallic escapes or other devices; that the defendants disregarded their duty in this behalf, and did not provide said building with any automatic metallic fire-escape, or other device of any nature whatsoever, and did not provide the said building with any ladder fire-escapes except one ladder fire-escape placed at the rear end of said building, which said lad-

der fire-escape was not provided or constructed in compliance with the statute aforesaid; that upon March 16, 1898, and at the beginning of the fire hereinafter mentioned, the plaintiff's intestate was employed as a salesman and was working on the seventh floor of the said building, and was rightfully in said premises; that upon the 16th of March, 1898, a fire was discovered in said building below the seventh story thereof, and that said fire spread rapidly through the entire building, by means whereof the elevators and stairways were enveloped in flame and smoke and the elevators rendered useless and the stairways impassable, and that the plaintiff's intestate was then and there suffocated by the smoke and fumes of said fire and fell to the ground dead; that said fire started and continued without fault or negligence of the plaintiff's intestate, and that the plaintiff's intestate was in the exercise of all due care and caution during all the time before mentioned; avers that the plaintiff's death was caused by reason of the negligence of the defendants aforesaid in not complying with the said statute and ordinance; that the plaintiff's intestate died leaving a father, a mother and a sister, his only next of kin."

The second count is the same as the first, except that it avers that the fire spread rapidly through the building and rendered the elevator and stairways impassable, and cut off access to the fire-escape at the west end of said building. The third count is the same as the second, and the fourth is the same as the first, except that it describes the defendants as being in possession and control of said building. The fifth count sets up the following facts: That in 1890 Simon Florsheim was the owner and lessee of the premises under a ninety-nine year lease, executed in the year 1886; that he built on this lot a seven-story brick building; that the statute, approved June 29, 1885, in force July 1, 1885, relative to fire-escapes, provided that all buildings more than four stories in height, except such as shall be used for private residences exclusively,

shall be provided with one or more metallic ladder or stair fire-escapes attached to the outer walls thereof and extending from or suitably near the ground to the uppermost story thereof, and so provided with platforms of such dimensions and in such proximity to one or more windows of each story above the first as to render access to such ladder or stairs from each such story easy and safe; that the number, location, material and construction of such fire-escapes shall be subject to the approval of the corporate authorities of cities organized under general or special laws, provided that all buildings more than two-stories in height, used for manufacturing purposes, etc., shall have at least one fire-escape for every fifty persons for which working, sleeping or living accommodations are provided above the second story; that this building had a capacity of more than one hundred persons, was used for manufacturing purposes, and had only one ladder fire-escape placed at the west end of the building; that in 1895 Florsheim assigned his lease to the defendant Frederick Ayer, and that afterwards, and before the fire, the Chicago Cottage Organ Company, a corporation, acquired an interest in said building, and that, at the time of the fire the company occupied a part of it; that the defendants did not comply with the provisions of said statute; that said statute was on July 1, 1897, repealed and on that date a new statute enacted in lieu thereof; that under the new statute it became and was the duty of said defendants to provide one or more metallic ladders or fire-escapes (setting up the foregoing statute of 1897); that plaintiff's intestate, at the time of the happening of the injuries, was working in said building and was rightfully upon the premises; that on March 16, 1898, while he was in the exercise of due care and caution, the building was destroyed by fire and he lost his life by reason of the negligence of the defendant. The sixth, seventh, eighth, ninth and tenth counts are the same, respectively, as the first, second, third, fourth and

fifth, except that neither of them avers that the building was used for manufacturing purposes.

LYNDEN EVANS, for appellant.

SMOOT & EYER, for appellee Frederick Ayer:

At common law there was no liability imposed upon the owner or occupant of a building to equip the same with fire-escapes or with means of exit in case of fire. *Pauley* v. *Steam Gauge Co.* 131 N. Y. 90; *Schmalzreid* v. *White,* 97 Tenn. 36; *Jones* v. *Granite Mills,* 126 Mass. 84; *Keith* v. *Granite Mills,* id. 90.

The Fire-escape act of Illinois adopted in 1897, requiring the erection of fire-escapes, is in derogation of the common law, is a penal statute, and must therefore be strictly construed. Statutes which are opposed to common rights and confer special privileges, or which prescribe the manner in which persons shall or shall not use their private property, must be strictly construed. *Cadwallader* v. *Harris,* 76 Ill. 370; *Thompson* v. *Weller,* 85 id. 197; *Rothgerber* v. *Dupuy,* 64 id. 452; *Williams* v. *Vanderbilt,* 145 id. 238; *Belanger* v. *Hersey,* 90 id. 70; *West* v. *Railway Co.* 63 id. 545; *Louisville* v. *Webster,* 108 id. 414; Sutherland on Stat. Const. secs. 333, 374.

The act of 1897 is unconstitutional because it is an unwarranted and unauthorized delegation of legislative power to the inspector of factories and to others. *State* v. *Hudson County,* 37 N. J. L. 12; *O'Neill* v. *Insurance Co.* 166 Pa. St. 72; *Dowling* v. *Insurance Co.* 92 Wis. 63; *People* v. *Johnson,* 95 Cal. 471; *Slinger* v. *Henneman,* 38 Wis. 504; *Tillman* v. *Cocke,* 56 Tenn. 429; 1 Dillon on Mun. Corp. (4th ed.) sec. 308; Sutherland on Stat. Const. secs. 68-70; *Galesburg* v. *Hawkinson,* 75 Ill. 152; *State* v. *Hayes,* 61 N. H. 264.

Even though it is assumed that the law is capable of enforcement, no one can be held liable for non-compliance therewith until the inspector of factories has served the notice required by the act. And the service of such no-

tice must be properly averred. The liability to erect the escapes is put upon one of several individuals named, in the disjunctive. There is no joint liability. Hence the inspector must determine who is to perform the duty and give the notice, before any one can be called·upon to comply. *Schott* v. *Harvey*, 105 Pa. St. 222; *Keeley* v. *O'Connor*, 106 id. 321; *Moeller* v. *Harvey*, 16 Phila. 66; *McCulloch* v. *Ayer*, 96 Fed. Rep. 178; *Grant* v. *Slater Mill Co.* 14 R. I. 380; *Maker* v. *Slater Mill Co.* 15 id. 112.

The act is unconstitutional because it is not uniform in its operation. *Chicago* v. *Trotter*, 136 Ill. 430; *Rich* v. *Naperville*, 42 Ill. App. 222; *Cicero Lumber Co.* v. *Cicero*, 176 Ill. 9; *Richmond* v. *Dudley*, 129 Ind. 112; *Cairo* v. *Coleman*, 53 Ill. App. 680; *Eureka* v. *Wilson*, 48 Pac. Rep. 150.

SAMUEL S. PAGE, and FRANKLIN P. SNYDER, for appellee the Chicago Cottage Organ Company:

The alleged Fire-escape act of 1897 is unconstitutional and otherwise invalid because it delegates legislative and judicial power. *O'Neill* v. *Insurance Co.* 166 Pa. St. 72; *Dowling* v. *Insurance Co.* 92 Wis. 63; *People* v. *Johnson*, 95 Cal. 471; *State* v. *Hudson Co.* 37 N. Y. L. 12; Sutherland on Stat. Const. secs. 68, 69; *Slinger* v. *Henneman*, 38 Wis. 504; *Tillman* v. *Cocke*, 56 Tenn. 429; *Galesburg* v. *Hawkinson*, 75 Ill. 153; *McCulloch* v. *Ayer*, 96 Fed. Rep.178.

It is fatally incomplete, uncertain, vague and indefinite. It is impossible of execution, is not uniform in its operation, and is unreasonable and oppressive. *Chicago* v. *Trotter*, 136 Ill. 430; *Rich* v. *Naperville*, 42 Ill. App. 222; *East St. Louis* v. *Wehrung*, 50 Ill. 28; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Richmond* v. *Dudley*, 129 Ind. 112; *Cicero Lumber Co.* v. *Cicero*, 176 Ill. 9.

It is special legislation, contravenes the bill of rights, and affects the liberty and property of the citizen or deprives him of it without due process of law. The title of the act is too narrow, and the subjects mentioned in the act are not expressed in the title.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

The argument in this case is mainly upon the constitutionality and validity of the act of 1897, and we shall confine our consideration of the case to that question. We see no substantial objection to at least some of the counts on the special demurrer.

The first objection made to the statute by counsel for appellees is, that it imposes legislative power upon the inspector of factories, in that it authorizes him to determine how many, and in what position, fire-escapes shall be placed, etc. It must be admitted that the act is loosely drawn, but the rule that it is the duty of courts to so construe statutes as to uphold their constitutionality and validity, if it can be reasonably done, is so well established that the citation of authorities is needless. In other words, if the proper construction of a statute is doubtful, courts must resolve the doubt in favor of the validity of the law. Statutes and city ordinances providing for fire-escapes are usually somewhat general in their enactments, and necessarily so, for the reason that it is impossible for the legislature to describe in detail how many fire-escapes shall be provided, how they shall be constructed and where they shall be located in order to serve the purpose of protecting the lives of occupants, in view of the varied location, construction and surroundings of buildings; and hence, so far as we have been able to ascertain, acts similar to the first section of this statute have been sustained in other States, though perhaps the question here raised has never been directly presented. *Rose* v. *King,* 49 Ohio St. 213; *Willy* v. *Mulledy,* 78 N. Y. 310; *Pauley* v. *Steam Gauge and Lantern Co.* 15 L. R. A. 194; *Schott* v. *Harvey,* 105 Pa. St. 222; *Orin* v. *Steinkamp,* 54 Ohio St. 284; *Sewell* v. *Moore,* 166 Pa. St. 570; *Keely* v. *O'Conner,* 106 id. 321; 2 Pa. Dist. Rep. 623.

The general rule is, that a statute must be complete when it leaves the legislature,—as to what the law is,—

leaving its execution to be vested in third parties. Thus, it was said in *Dowling* v. *Lancashire Ins. Co.* 92 Wis. 63: "The result of all the cases on this subject is, that a law must be complete in all its terms and provisions when it leaves the legislative branch of the government, and nothing must be left to the judgment of the electors, or other appointee or delegate of the legislature, so that in form and substance it is a law in all its details *in presenti*, but which may be left to take effect *in futuro*, if necessary, upon the ascertainment of any prescribed fact or event." And it is said in Sutherland on Statutory Construction (sec. 68): "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no objection can be made."

In *People* v. *Reynolds*, 5 Gilm. 1, it was held that to establish the principle that whatever the legislature may do it shall do in every detail or else it shall go undone, would be almost to destroy the government. It is there said (p. 13): "Necessarily, regarding many things, especially affecting local or individual interests, the legislature may act either mediately or immediately. We see, then, that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously, do itself. Without this power legislation would become oppressive and yet imbecile."

In this act the law is complete in all its details, requiring the fire-escapes to be put in certain buildings. The outside escapes must be so constructed as to render access to the same from each story easy and safe. Though just what is meant by *"automatic, metallic* fire-escapes" may be uncertain, it does require a proper device to be attached to the inside of the described buildings so as to

afford an effective means of escape to all occupants who, for any reason, are unable to use the ladders or stairs. In the execution of the law the inspector of factories is given a discretion as to the number, location, material and construction of such escapes in each and every building. We are unable to see in what way the act, thus understood and construed, delegates to the inspector of factories legislative power.

Of still less force is the objection that the act confers judicial power upon the inspector of factories. The inspector is given no power to judicially determine any question, but acts ministerially in the supervision of the building of fire-escapes. Judicial power is "the power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the law." The judicial power is never extended to cases of the exercise of judgment in the execution of a ministerial power. *Owners of Lands* v. *People*, 113 Ill. 296.

It is also objected that the subjects mentioned in the body of the act are not sufficiently expressed in the title. The title of the act is, "An act relating to fire-escapes for buildings." It seems to be thought that this title is not sufficient to cover the provisions imposing duties upon inspectors of factories, the grand jury, the sheriff and the circuit and criminal courts, and the penalty prescribed for a violation of the act. Section 13 of article 4 of the constitution, requiring acts of the legislature to embrace in their title but one subject, which shall be expressed in the title, is complied with where the general object of an act is so expressed. "It is not to be expected, neither is it possible, for the title of the act to contain all the various provisions of the act itself. * * * If such was the case, the title to the act would have to be as comprehensive as the act itself. Such was not the object or intent of the constitution." (*Burke* v. *Monroe County*, 77 Ill. 610.) Judge Cooley, in his work on Constitutional Limitations, (172,) dealing with this sub-

ject, says: "The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible." It has accordingly been held that the title of "An act to establish a police government for the city of Detroit" was not objectionable for generality, and that all matters properly connected with the establishment and efficiency of such a government, including taxation for its support and courts for the examination and trial of offenders, may consistently be included in the bill under this general title. Our holdings have been consistent with the rule thus announced.

A further objection, that the statute is local or special, is, we think, without force. "Laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the laws. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of those within the scope of their operation." (*People* v. *Wright*, 70 Ill. 388.) It is sufficient under that provision of the constitution which prohibits local or special legislation, if a law applies to all subjects of the same class or degree. (*Potwin* v. *Johnson*, 108 Ill. 70.) This act applies to all buildings "four or more stories in height, excepting such as are used for private residences exclusively," with a proviso "that all buildings more than two stories in height, used for manufacturing purposes," etc., shall have fire-escapes. The act cannot be held to be local, nor is it special in its enactment; nor can we see in what sense it does not operate uniformly.

It is said that "even though it is assumed that the law is capable of enforcement, no one can be held liable for the non-performance therewith until the inspector of factories has served the notice required by the act." With this contention we cannot agree. It is true, the first and second sections do not say who shall provide the required fire-escape, but we think the fair and reasonable intendment is that the owner or owners shall perform that duty, and we so held in construing the Fire-escape act of 1885, the provisions of which in this regard are the same as the act under consideration, in the recent case of *Landgraf* v. *Kuh*, 188 Ill. 484. The language of section 6, "who shall be required to place one or more fire-escapes upon any building or buildings, under the provisions of this act," does not mean who shall be required by the inspector of factories, but who shall be required by the act. The duty to provide fire-escapes upon buildings described in section 1 does not depend upon the performance of any duty by the inspector of factories.

In *McRickard* v. *Flint*, 114 N. Y. 222, the language of the act under which the suit was brought was, "in any store or building in the city of New York in which there shall exist or be placed any hoisting elevator or well-hole, the openings thereof through and upon each floor of such buildings shall be provided with and protected by a substantial railing, and such good and sufficient trap-doors with which to enclose the same, *as may be directed and approved by the superintendent of buildings*," and it was held "the exercise of the duty imposed upon the defendants by this statute was not dependent upon any action of the superintendent of buildings. They could not properly delay for him to direct, but it was for them to call on him for directions and approval·in that respect."

In *Willy* v. *Mulledy, supra,* where the act provided "that every building in the city of Brooklyn should have a scuttle or place of egress in the roof thereof," etc., and also that certain houses "shall be provided with such

fire-escapes and doors as shall be directed and approved by the commissioner," (of the department of fire and buildings,) and also that "any person, after being notified by such commissioner, who shall neglect to place upon any such building the fire-escapes herein provided for, shall forfeit the sum of $500 and shall be guilty of a misdemeanor," it was held: "The owner of the building in question was bound to provide it with a fire-escape. He was not permitted to wait until he should be directed to provide one by the commissioners. He was bound to do it in such way as they should direct and approve, and it was for him to procure their direction and approval." And the court further says: "Here was then an absolute duty imposed upon a defendant by statute to provide a fire-escape, and the duty was imposed for the sole benefit of the tenants of the house, so that they would have a mode of escape in case of a fire. For the breach of this duty, causing damage, it cannot be doubted that the tenants have a remedy." To the same effect is *Rose* v. *King, supra.*

When the act went into effect it was the duty of every owner, trustee or lessee or occupant in the actual control of any building within the description mentioned in the first section, in obedience to section 6, to file in the office of the inspector of factories a written application for a permit to erect or construct fire-escapes, and if these defendants failed to do so, as alleged in the several counts of the declaration, and injury resulted from their failure to place the required fire-escapes in the building described, they incurred a liability to the person injured, and cannot escape that liability merely because they may not have been designated by the inspector of factories as the persons upon whom the duty was imposed to comply with the law. In other words, the law imposed upon them the performance of the duty, and the action of the inspector of factories, the grand jury, the sheriff and the circuit and criminal courts is only made necessary in case they failed to do that duty. It has

been held that the term "owner," in similar statutes, does not mean the owner of the fee, but may mean the lessee in actual possession and control of the building; but we are not aware that any court has held such laws invalid because of their failure to definitely designate who should be liable. We think it clear that under this statute the owner is primarily liable for a failure to perform the duty.

Several of the counts in this declaration aver that the defendants, upon and for a long time prior to March 16, 1898, were owners of a certain seven-story brick building, etc.; that said building was used for manufacturing purposes; that by reason of the statute approved May 27, 1897, in force July 1, 1897, it became their duty to provide such building with such fire-escapes, the number, location, material and construction of such escapes to be subject to the approval of the inspector of factories, but that the defendants have never filed in the office of said inspector of factories a written application for a permit to erect or construct such fire-escapes; that by reason of the statute it became their duty to apply for such permit, and that they failed and neglected to comply with the requirements of the statute in providing fire-escapes. The demurrer, of course, admits these allegations to be true, and we are of the opinion that such counts, under the provisions of the statute, sufficiently fix the liability upon defendants.

A considerable portion of the argument is devoted to the discussion of the question whether or not the statute should receive a strict construction. We think it is well settled that at common law there was no liability imposed upon the owner of a building to provide the same with fire-escapes or other means of exit in case of fire, as a general rule, and that for this reason, as well as because of the penal character of the act, it must be strictly construed,—that is, that it cannot be extended to persons or to requirements not fairly within the provisions of the act. The rule in such case is, that courts cannot properly

give force to statutes beyond what is expressed by its words or is necessarily implied from what is expressed. Our construction of this act in no way violates that rule.

The judgment of the superior court will be reversed, and the cause will be remanded to that court for further proceedings not inconsistent with the views here expressed.                    *Reversed and remanded.*