W. H. BROWN v. CITY OF ST. PETERSBURG, *et al.*

153 So. 140-141.

En Banc.

Order Filed August 8, 1933.

Opinion Filed November 17, 1933.

Roney H. Martin, L. P. Hardee, and W. B. Dickenson, for Appellant;

W. F. Way, Carroll Runyon and William C. Hodges, for Appellees.

PER CURIAM.—Section 10 of Chapter 15505, Acts of 1931, Special Laws of Florida (paragraph "g") reads as follows:

"(g)   The City Manager shall make all purchases for the City *in the manner provided by ordinance* and shall, under such rules and regulations as may be provided by ordinance, sell all personal property of the City not needed for public use or that may have become unsuitable for public use.   Before making any purchase or sale, the City Manager shall give opportunity for competition under such rules and regulations *as may be* established by ordinance." (Emphasis ours.)

The Court construes the first emphasized portion of this section of the city charter as imposing *ex proprio viogore* a statutory limitation on the authority of the city manager to make purchases for the city, by requiring that the city manager shall have authority to make such purchases *only* in the "manner" provided by ordinance.   In the absence of some manner having been laid down by ordinance for the city manager to make purchases, the authority of the city manager under the city charter is not complete, and therefore contracts made by him, or undertaken to be made by

him, in the absence of such authority, are unauthorized, although they may, perhaps, by the action of the city in recognizing them as valid after they have been already filled or executed, be held to have been ratified and thereby cured of any illegality in the city manager's authority in the first instance to have made them.

The Court construes the last paragraph of this section, which is to the effect that before making purchases or sales the city manager shall give opportunity *for competition* "under such rules and regulations *as may be* established by ordinance" as limiting the authority of the city manager to making purchases after competition, only to those cases in which the competitive requirement has been first imposed by a rule or regulation established by ordinance in the first instance, for the purpose of having the city manager comply with same. Under this latter clause, in the absence of any rule or regulation requiring competition, the city manager in carrying out the authority to make purchases otherwise provided for by ordinances enacted under the first clause of this section, is not required to make purchases subject to competition, since the last clause of this section is merely a permissive limitation that may, or may not, be imposed by ordinance.

The Court is further of the opinion that Section 17 of the city charter imposes no limitation on the powers which the city manager, as such city manager, is authorized by Section 10 of the charter to exercise "in the manner provided by ordinance."

It follows from what has been stated above that the complainant below made a *prima facie* case for the granting of the injunction against the city manager to restrain the execution of a purchase contract undertaken to be made by him not "in the manner provided by ordinance" (no or-

dinance on the subject having been adopted) and that therefore such injunction should not have been dissolved by the Chancellor. An order will be entered here superseding the order dissolving the injunction, upon the compliance by the appellant of such terms and conditions as to such supersedeas, as the circuit judge may by his order hereunder impose.

Supersedeas granted.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

BUFORD, J.—This case is before us on appeal from final decree entered by the Chancellor below dismissing the bill of complaint, which was a bill to enjoin the City Manager of the City of St. Petersburg and the City of St. Petersburg, its agents, servants and employees, from proceeding in any manner in the consummation of the allowance or awarding of a certain contract therein complained of and from paying any monies of the city in payment of any services performed or to be performed under the terms of the purported contract complained of.

The allegations of the bill of complaint show that the appellee, Cotton, as City Manager of the City of St. Petersburg had assumed to enter into a contract on behalf of the said City for the publication of certain booklets for and at the price of $1075.00.

Sub-paragraph "G" of Section 10, Chapter 15505, Acts of 1931, which Act contains the city charter provisions pertinent to this case, provides as follows:

"(g) The City Manager shall make all purchases for the City *in the manner provided by ordinance* and shall, under such rules and regulations as may be provided by ordinance, sell all personal property of the City not needed for public use or that may have become unsuitable for pub-

lic use. Before making any purchase or sale, the City Manager shall give opportunity for competition under such rules and regulations *as may be* established by ordinance." (Emphasis ours.)

The record shows that the suit was filed on the 11th day of July, 1933, in the court below.

This Court rendered an opinion in this case on August 8th, 1933, not yet reported. In that opinion we said:

"The Court construes the first emphasized portion of this Section of the City Charter as imposing *ex proprio vigore* a statutory limitation on the authority of the City Manager to make purchases for the City, by requiring that the City Manager shall have authority to make such purchases *only* in the 'manner' provided by ordinance. In the absence of some manner having been laid down by ordinance for the City Manager to make purchases, the authority of the City Manager under the City Charter is not complete; and therefore, contracts made by him, or undertaken to be made by him, in the absence of such authority, are unauthorized, although they may, perhaps by the action of the city in recognizing them as valid after they have been already filled or executed, be held to have been ratified and thereby cured of any illegality in the City Manager's authority in the first instance to have made them.

"The Court construes the last paragraph of this Section, which is to the effect that before making purchases or sales the City Manager shall give opportunity *for competition* 'under such rules and regulations *as may be* established by ordinance' as limiting the authority of the City Manager to making purchases after competition, only to those cases in which the competitive requirements have been first imposed by a rule or regulation established by ordinance in the first instance, for the purpose of having the City Man-

ager comply with same. Under this latter clause, in the absence of any rule or regulation requiring competition, the City Manager in carrying out the authority to make purchases otherwise provided for by ordinances enacted under the first clause of this Section, is not required to make purchases subject to competition, since the last clause of this Section is merely a permissive limitation that may, or may not be, imposed by ordinance."

There is no contention here that the contract had been performed when the suit was filed. There is some contention that the contractor had gone to some expense in pursuance of the purported contract. It is also shown here that the City Commission of the City of St. Petersburg attempted to ratify the contract by a resolution but this attempted ratification was prior to the performance of the contract and, therefore, what was said in the former opinion in this case in regard to possible ratification is not applicable.

Under the provisions of the City Charter, the City Manager was not authorized to make the contract unless such authorization was embraced in an ordinance of the City of St. Petersburg. A resolution can not, in cases of this sort, be substituted and have the force and effect of an ordinance, nor can a resolution supply authority which is required to be vested by ordinance.

In the City of Louisville v. Parsons, 150 Ky. 420, 150 S. W. 498, the Supreme Court of Kentucky said:

"Under Ky. St. No. 2774, *et seq.*, providing for the adoption of ordinances not in conflict with the Federal or State Constitutions and the State statutes, and for the publication of ordinances, etc., all legislation by a city must be by ordinance, whether the city acts in its governmental capacity or in its private or business capacity, and an ordinance is

necessary to create an indebtedness, whether arising in a governmental capacity or in a private or business capacity; and a resolution providing for the employment and payment of persons to examine the affairs of a water company, all of the stock of which is owned by the city, does not justify the incurring of an indebtedness against the city, though it be assumed that the city is acting in its private or business capacity.

"Where the charter of a city is silent as to the manner in which legislation may be enacted, it may be enacted by resolution or ordinance."

In Anderson v. Village of Berwyn, *et al.,* 135 Ill. App. Court Rep. 8, the Appellate Court of Illinois said:

"With this contention we cannot agree. It is doubtless sound as a legal proposition that a municipality can legislate only through the passage of ordinances; that acts of legislation by a municipality which prescribe a permanent rule of conduct or government should be established by ordinance. But, in the case at bar, the act of legislation, if it can be so termed, expressing the general policy or rule of conduct regarding the taking of water by consumers was done in and by the ordinance. The execution of the ordinance in the selection of the meters was reserved for further action by the board, and in other respects its execution was committed to the executive officers of the village. This, we think, was entirely within well-recognized legal principles. The ordinance is not subject to the objection that it delegates to administrative officers power which is legislative in nature or character. Nor is the amended resolution selecting the kind of meters subject to the objection that it is legislative in its nature. The resolution was rather executive and was a reasonable step in the execution of the ordinance. As said in Arms v. Ayer, 192 Ill.

601, quoting from Sutherland on Statutory Construction, Sec. 68: 'The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made.' See also Owners of Land v. People, 113 Ill. 296; People v. Reynolds, 5 Gilm. 1."

In the case now under consideration the Legislature delegated to the City Commission the power to enact ordinances under which the city manager would be authorized to make purchases in behalf of the city, but it did not authorize the city manager to make purchases on behalf of the city *until* so authorized by ordinances. Therefore, in the absence of an ordinance, the city manager was not clothed with authority to make contracts of the character here involved.

"All persons dealing or contracting with a municipal corporation must at their peril inquire into the power of such corporation, or its officers, to make the contract contemplated." City of Enterprise v. Rawls, 204 Ala. 528, 86 Sou. 374; Edwards Hotel & City R. Co. v. City of Jackson, 96 Miss. 547, 51 Sou. 802; Town of Madison v. Newsome, 39 Fla. 149, 22 Sou. 270.

In the case of City of Pensacola v. Southern Bell Tel. Co., 49 Fla. 161, 37 Sou. 820, the city sued the telephone company for rent for space occupied in the public streets for the erection of its telephone poles. The defendant pleaded in part:

"That, thereafter, and before July 9, 1890, under the provisions of said Act, the City of Pensacola became a provisional municipality, governed by the officers and exercising the powers provided by said Act; that upon application by

defendant for a grant of the right to use the streets of the said municipality for the purpose of planting poles therein and stringing wires thereon, for the purpose of furnishing telephone service to the City of Pensacola and of the vicinity, the board of commissioners of said municipality. on July 9, 1890, adopted a resolution, the president of said board being present and assenting to the said resolution, whereby the defendant was granted permission to erect such poles, the consideration of such grant being the erection of said poles and the maintenance of the said system, and the grant of the right by the defendant to the said city to use defendant's poles for the fire alarm system of the said city, as set forth in said resolution; that the president of the said board of commissioners presided at the said meeting of said board at which the said resolution was adopted, and then and there consented to such adoption and sign and approved the minutes of the proceedings of said board, in which said resolution was recorded. A copy of such resolution is hereby attached, marked Exhibit 'A' and made a part hereof; that relying upon the said resolution and the grant therein contained," etc., etc.

Mr. Justice HOCKER in the opinion prepared for the Court, said:

"Our next inquiry is, does the plea set up a good defense to the action? The plea sets up an estoppel by reason of an alleged grant, contained in a resolution of the board of commissioners of the city, adopted July 9, 1890, alleging that the president of the board was present and assenting to the said resolution; that he presided at the meeting when the resolution was adopted, consented to its adoption and signed and approved the minutes of the said board in which the resolution was recorded; that the city availed itself of the right to use the poles for its fire alarm system, and

that these acts and agreements constituted a contract between the parties and that the ordinance contained in the declaration is in violation of the contract.

"It will be noticed that the president of the board is vested with all the power and charged with all the duties of mayor under the general laws of the incorporation of cities and towns; that by Section 2, Chapter 1855, laws of 1871, amending the general law that all ordinances, after being passed are to be submitted to the mayor or person acting as such for his approval. If approved, he signs the same and they become laws. The statute then provides for subsequent proceedings and their effect. The plea undertakes to show a compliance with these provisions, but does not do so. It does not allege that after the resolution was passed it was submitted to the president, acting as mayor, for his approval, nor that it was returned by him to the board with his objections, and was adopted over his veto by a two-thirds vote, or that he retained it and it became a law without his approval. Our general laws make no provision for the passage of resolutions by cities and towns; they only mention ordinances. There is a plain distinction between the functions of an ordinance and a simple resolution not adopted as an ordinance. An ordinance is the mode of expressing the legislative acts of a municipal corporation, and a resolution is an order of a temporary character and of a ministerial nature. 21 Am. & Eng. Ency. Law (2nd Ed.) 947; City of Jacksonville v. Ledwith, 26 Fla. 163, text 197, 7 South. Rep. 863."

In 43 C. J. 519, the writer says:

"*Resolution or Regulation.*—'Regulation' is a very broad term. While it has been said that 'Regulation' and 'Ordinance' may have substantially the same meaning, 'ordinance' is not so comprehensive as 'regulation' and is a more solemn

and .formal than 'resolution.' An ordinance is a continuing regulation,—a permanent rule of government, while a resolution is usually declared not to be the equivalent of an ordinance, but rather an act of a temporary character, not prescribing a permanent rule of government, but is merely declaratory of the will of the corporation in a given matter, and in the nature of a ministerial act. While it has been said that in substance there is no difference between a resolution and an informal motion made and carried, nevertheless a resolution passed with all the formalities required for passing ordinances may operate as an ordinance regardless of the name by which it is called."

Certainly, it cannot be seriously contended that the Legislature ever intended to vest in a city manager the full power and authority to purchase in the name of and with the funds of the municipality any and all things which he might be inclined to purchase, without let or hinderance. The statute clearly makes his authority to purchase any supplies dependent upon the provision of ordinance, or ordinances, duly adopted by the city commission. Under the provisions of the charter no ordinance can be adopted without notice to the people whose money pays the bills. If the city manager, not being thereunto authorized by ordinance, can by contract bind the city's credit to pay $1075.00 and place the burden of payment on the tax-payer he may likewise bind the city's credit for $100,000.00, or any other sum, and thereby place such a burden on the tax payers.

That the subject matter of the contract here attached was a matter of general interest to the citizens of the city and that it was to serve a useful and beneficial purpose offers no legal reason why it should not be accomplished in orderly and lawful manner. Neither is it of controlling con-

sequence that the intentions of the parties were honest and honorable.

The taxpayer, even yet, has the right to demand that the public fund be expended in the manner and for the purposes provided by law. If the manner and purposes provided are unwise his redress is only at the polls and in the legislative branch of government; but the courts must protect and enforce his legal rights as they are found to exist.

So the decree should be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed. It is so ordered.

Reversed.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN, J., absent and not participating on account of illness.