88 So.2d 532 (1956)
NELSON M. COOK, AS A FREEHOLDER AND TAXPAYER OF THE CITY OF ORMOND BEACH, A MUNICIPAL CORPORATION OF VOLUSIA COUNTY, STATE OF FLORIDA, AND OTHER PERSONS SIMILARLY SITUATED, AND CITY OF ORMOND BEACH, A MUNICIPAL CORPORATION OF VOLUSIA COUNTY, STATE OF FLORIDA, FOR THE BENEFIT AND USE OF THE CITY OF ORMOND BEACH, A MUNICIPAL CORPORATION OF VOLUSIA COUNTY, STATE OF FLORIDA, APPELLANTS,
v.
NAVY POINT, INC., A FLORIDA CORPORATION; ELLINOR VILLAGE, INC., NO. 1, A FLORIDA CORPORATION; ELLINOR VILLAGE, INC., NO. 2, A FLORIDA CORPORATION; ELLINOR VILLAGE, INC., NO. 3, A FLORIDA CORPORATION; ELLINOR VILLAGE, INC., NO. 4, A FLORIDA CORPORATION, APPELLEES.
Supreme Court of Florida, Division A.
March 28, 1956.
Rehearing Denied July 19, 1956.
*533 Maurice Wagner, Daytona Beach, for appellants.
Raymond, Wilson & Karl, Daytona Beach, for appellees.
HOBSON, Justice.
Appellant, Nelson Cook, a freeholder and taxpayer of the City of Ormond Beach, sued Navy Point, Inc., and Ellinor Village, Inc., Nos. 1, 2, 3 and 4, all Florida Corporations, for a declaratory decree. Relief prayed for was that the chancellor declare the rights of the parties and that plaintiff is entitled to an accounting to determine the sums due and owing by the defendant corporations to the City of Ormond Beach.
The City was originally joined as a party plaintiff, but the trial court, on motion, dismissed the City from the suit. Certiorari was sought from this court to review the order, but it was denied. This appeal is taken from a summary final decree for defendants.
The chancellor granted defendants' motion for summary decree while motions by the plaintiff to strike portions of the answer, and for leave to amend the complaint, were pending and not yet determined. Appellant contends that this was error. It appears that the motion for leave to amend was filed with the court December 14, 1954, the day of the hearing on defendants' motion for summary final decree, and read, in its entirety, omitting formal parts and signatures, as follows:
"Comes now your Plaintiff, Nelson M. Cook, and moves this Honorable Court allow him to amend his Bill of Complaint."
No proposed amendment was tendered with this motion. The chancellor could have concluded that this motion was made for dilatory purposes, and his ruling upon the *534 motion for summary final decree without considering the motion for leave to amend was not an abuse of discretion under the circumstances.
Before the hearing was held on the motion for summary decree appellant had filed a motion to strike certain portions of appellee's answer. This motion to strike was also undisposed of when the trial court ruled upon the motion for summary decree, and appellant urges that there was error in this procedure. In Lewis v. Lewis, Fla., 73 So.2d 72, 74, we said:
"[I]t was not error to grant defendant's motion for summary decree before disposition was made of plaintiff's motion to strike portions of the amended answer and cross-bill. Not only is there no showing that this motion was ever noticed for hearing, but the decision first to hear and decide defendant's motion for summary decree lay well within the ambit of the court's inherent power to control its docket."
As in the Lewis case, which is controlling on this point, there is no showing here that the motion to strike was ever noticed for hearing.
The motion for summary decree was served upon counsel for the plaintiff by mail on December 3, 1954, and filed on December 6, 1954. The hearing, as stated above, was held on December 14, 1954. An affidavit upon which the summary decree was partially based was served on counsel for the plaintiff by mail on December 10, 1954, or four days before the hearing, received by plaintiff's counsel one day before the hearing, and filed for the first time before the court on the day of the hearing. Although service of the motion was not untimely, appellant contends that the chancellor should not have considered the affidavit which was not filed with the motion.
Rule 1.36, Florida Rules of Civil Procedure, F.S.A., under which the motion for summary final decree was made, provides in part, in subdivision (b) thereof, that "A party against whom a claim * * is asserted or a declaratory judgment or decree is sought may, at any time, move with or without supporting affidavits for a summary judgment or decree in his favor as to all or any part thereof." Subdivision (c) provides in part that "The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits." Other provisions of this rule make it clear that the party opposing the motion for summary judgment or summary final decree is to be accorded the right to bring to the attention of the court any evidence he may have to support his claim, or to establish that there is a genuine issue of material fact. This in turn requires time to study and if possible controvert the matters produced by the proponent of the motion. In all but extraordinary circumstances, affidavits in support of the motion, if any there are, should be filed with it to allow the opponent time to controvert them. The ten day minimum time limit prescribed for service is often none too long, considering the swift and dispositive character of the motion. A motion for summary judgment is calculated to save valuable trial time and thus to assist in securing speedy and inexpensive justice, but one object of the new rules of procedure is to prevent surprise, and this equally praiseworthy objective should not be overlooked. Appellant will not be prejudiced in this case, however, because of the view we take of points to be discussed hereafter.
The next contentions of appellant go to the merits of the case, and it is necessary to outline certain basic issues posed by the pleadings and some of the findings of the chancellor.
The complaint alleged that the defendant corporations are indebted to the city by reason of their failure to pay water meter installation, plumbing, construction and electrical permit fees, all of which fees have been charged against other taxpayers of the municipality and are required by ordinance. The defendants in their answer made a general denial but affirmatively *535 stated, among other things, that they paid for all of the plumbing, electrical and building permits "as required" and that no effort had been made by the city to recover any sums for installation of water meters or plumbing, electrical and building permits.
Numerous affidavits and depositions were filed. The chancellor found that during 1948 and 1949 Navy Point, Inc., built on unimproved land in the City of Ormond Beach the Ellinor Village Housing development, which consisted of 636 housing units, at a cost of nearly $3,000,000, exclusive of the cost of the land. The chancellor further found that the governing body of Ormond Beach, in order to induce Navy Point, Inc., to construct the housing project, agreed to waive the city's portion of all building, plumbing and electrical permits, but there was no written record of this agreement. Navy Point, Inc., did, however, pay some amounts for permits, and also "advanced" to the city a sum to cover the cost of installation of a water distribution system. The chancellor found that all agreements entered into by the city officials and the defendants were made in good faith and there was no evidence of wrongdoing. He further found that the last act complained of by the plaintiff took place more than five years prior to the filing of the complaint and held that plaintiff was barred by laches. On these findings he entered summary judgment for the defendants.
We have reviewed the record at length. There is testimony and an affidavit making reference to the fee-waiving agreement of which there was no record. Precisely what this agreement entailed is not clear. But if the chancellor's finding that such an agreement existed is supported by the record, it was clearly ultra vires, as appellant contends, if only for the reason that under the city charter such an agreement could lawfully have been entered only by ordinance, resolution or written contract. See Turk v. Richard, Fla., 47 So.2d 543; Beck v. Littlefield, Fla., 68 So.2d 889 and Universal Const. Co. v. Gore, Fla., 51 So.2d 429.
We do not hold that the alleged agreement was void because of lack of power on the part of the city to enter into such an agreement, but it was ultra vires and therefore void because the city, in entering into the agreement, acted in an unauthorized manner.
It is argued that benefits conferred upon the city formed a consideration and inducement for the waiver agreement. As we pointed out in Universal Const. Co. v. Gore, supra, the conferring of benefits cannot be used as an excuse for unauthorized methods. The purported agreement was void, and no right was relinquished either by the city or by the appellant thereby.
One question remaining is whether or not appellant was barred by laches or in any way "estopped" to seek relief because he "acquiesced" in the conduct of which he now complains. So far as appears, the only written record of the negotiations by the defendants and the city consists of one of the results thereof, a water revenue certificate in the amount of $75,000 and a resolution whereby such certificate was issued. As we stated above, the chancellor found that defendant, Navy Point, Inc., had "advanced" to the city the money to construct a water distribution system to serve Ellinor Village. This merely means that the defendant, Navy Point, Inc., purchased from the city a callable water revenue certificate in the amount of $75,000 at face value, which represents a debt of the city to this defendant upon which it pays interest at the rate of 3 1/2% per annum and for which it is liable for principal and interest. The issuance and sale of this certificate took place in 1949. Certainly appellant could not have been expected, merely on the basis of this ordinance and certificate, to uncover the entire course of dealing which culminated in it, including the oral agreement which it is now contended was entered. Thus only the lapse of time remains as a basis for the application of the laches doctrine, and the lapse of time alone is insufficient to support a finding of laches. City of Stuart v. Green, 156 Fla. 551, 23 So.2d 831. For the same reasons, *536 there was no "waiver" or "estoppel" to operate against either the appellant or the city.
Finally, it appears that there are genuine issues of material fact still unresolved, and this is fatal to a summary final decree. For example, the complaint alleged that installation fees for water meters were required by city ordinance, but that defendant had not paid these charges. This allegation, as appellees concede, is denied, under the general denial in the answer.
It follows that the summary final decree from which this appeal is taken must be, and it is hereby, reversed and the cause remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
DREW, C.J., and TERRELL and THORNAL, JJ., concur.