## CITY OF WEST PALM BEACH v. H & Q ENTERPRISES, INC.
### Case No. M-81-5545-C
County Court, Palm Beach County
February 3, 1982

Carl V.M. Coffin, for plaintiff.

Walter N. Colbath, Jr., P.A., for defendant.

JAMES T. CARLISLE, County Judge

The issue in this case is whether a contract with a municipality is void by reason of the municipality's failure to comply with formal requisites imposed by charter or statue. More particularly the question is whether a municipality can avoid its obligation under such a contract.

The city and I & R entered into a contract, dated February 9, 1976, giving defendant the exclusive right to run a concession at plaintiff's West Palm Beach Municipal Auditorium from October 1, 1975, through

September 30, 1980. I & R Enterprises was the low bidder. I & R had the right to extend the contract an additional five years through September 30, 1985, and, in fact, did so.

The city, acting through its Commission, approved the agreement by Resolution No: 8-76 passed February 9, 1976.

The West Palm Beach City Charter (Chapter 65-2381, Special Laws of Florida, 1965, as amended) provides at Sec. 3.09 that ". . . enactment of an ordinance shall be the sole method of action by the city commission . . . in granting, renewing, or extending a franchise encumbering, or pledging real property owned by the city . . .".

The agreement between the city and I & R grants a franchise to H & Q and is a lease for a term exceeding five years.

In support of the motion for summary judgment the city relies on *Brown v. City of St. Petersburg*, 111 Fla. 718, 153 So. 141 (1933); *Ransey v. City of Kissimmee*, 139 Fla. 107, 190 So. 474 (1939); and *Cook v. Navy Point*, 88 So. 2d 532 (Fla. 1966). In *Brown*, supra, the city manager entered into a contract on behalf of the city for the publication for certain books. The charter provided that the city manager could make purchases for the city in the manner provided by ordinance. The purchase of the books was authorized by resolution. The Supreme Court held the contract was void unless the city manager was authorized by ordinance; and that persons dealing or contracting with municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make the contract contemplated.

In *Ramsey*, supra, the charter provided that the city commission could make contracts to be expressed by ordinance or resolution. There was no motion, resolution, or ordinance. At a commission meeting one of the commissioners told the city attorney to examine the contract and, if it was all right, give it to Ramsey. The attorney made some changes and did re-submit the contract to the commission. The Court held that even if the mayor had authority to bind the city, the contract which was eventually signed was not the contract signed by the mayor. The Court held the contact to be void. The Court noted that Ramsey had been paid $18,616.56 for engineering services in connection with a sewer project and that much of the work done on the sewer project was used on the paving project, which was the subject of the action, without Ramsey doing any additional work. It would have been impossible to determine the amount of work actually done on the paving contract exclusive of all other work. The paving was never done because bond market went down and the city could not realize enough from the sale of bonds in order to do the work. The Court also noted that Ramsey's remedy, if any, was on quantum merit, and not on the contract.

In *Cook v. Navy Point*, supra, Cook was a taxpayer who brought suit for an accounting to determine the amounts due by Navy Point and other corporations to the City of Ormond Beach. The city, in order to induce Navy Point, Inc. to construct a housing project, agreed to waive fees on building, plumbing and electrical permits. There was no written record of the agreement. The Court held that if such an agreement existed it was void because under the city charter it could have been entered by ordinance, resolution or written contract.

None of these cases stand for the proposition that a city can avoid its obligation under a contract by urging its own fault in failing to adhere to legal formal prerequisites. In *Brown*, supra, we have simply a contract between the city manager and a bookseller. *Navy Point*, supra, is a suit by an aggrieved citizen to set aside an agreement between a municipality and another party. There was no written agreement, only an oral agreement at best.

These cases were brought by plaintiffs to set aside agreements between a municipality and another for failure to comply with formal prerequisites.

> "It is one thing for an aggrieved citizen to seek to have set aside an agreement between a government and another party because of Sunshine Law violations; but quite another for the government entity itself to seek to escape its obligations based upon its own alleged wrongdoing. It has long been recognized to be unethical for a lawyer to attack his own work product. It is at least immoral and an indication of lack of integrity for a government or its agency, whose duty it is to serve not subvert its citizens, to do the same." *Killearn Prop., Inc. v. City of Tallahassee*, (1 DCA 1979), 366 So.2d 172 (cert. denied).

In each the formal aspects fall far short of even a resolution by the full commission. Ramsey likewise falls far short. B contract, signed by the mayor, later modified by the city attorney, is attempted to be enforced. Even if the contract was valid, it was impossible to determine the damages and the Court, even then, holds out the hope of quantum merit.

In *Ogdon City v. Bear Lake and River Waterworks and Irrigation Co.*, (Utah Supreme Court 1904) 76 Pac. 1069, the city had inadequate waterworks. Bear Lake built a new one under contract with the city. Six years after completion and hook up of the new water system the city sued to have the contact declared void and it named as owner of the waterworks, on the ground that the contract was made by resolution rather than ordinance. The Utah Supreme Court held that the city was estopped to assert approval by resolution rather than by required

ordinance when it accepted the benefits of the contract. In *San Francisco Gas Co. v. San Francisco*, 1858, 9 Cal. 453, 470, Justice Field, later of the United States Supreme Court, said:

> "The obligation to do justice rests equally upon it (the municipality) as upon an individual. It cannot avail itself of the property or labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance on the subject."

In *Killearn Prop.*, supra, the City of Tallahassee had a surplus of electricity. Killearn wanted to furnish utility services to a sub-division it was constructing. At the time, Killearn was negotiating with Talquin Electric, a competitor of the city in the electric business. An agreement was reached betweem Killearn and the city whereby the city agreed to furnish one free street light for each $1,000.00 of utility revenue received annually. The agreement was adopted and ratified by the city. The evidence was conflicting as to whether the agreement was ever approved by the City Commission in an open meeting. The city and Killearn operated under the agreement for some years. The city received substantial income from electricity distributed in the Killearn sub-division. In 1974 the city notified Killearn that they would begin to charge for the street lights. The First District Court of Appeal held that "estoppel carries Killearn over any objections by the city on grounds of lack of proper formalities or procedures in making the agreements." The Court went on to say:

> "If the rule were not as so announced a governmental agency could purposefully fail to comply with some statutory prerequisite to the execution of a contract, avail itself of the benefits of that contract until such time as it arbitrarily and capriciously chose to ignore it, and then do so with no fear that any court could compel it to honor its agreement. It is just such a theory that the city asserts in this case and it is because of such conduct on the part of unscrupulous parties that the doctrine of equitable estoppel has become engrained as a cornerstone of jurisprudence of a majority of the states in this nation."

The city went on to assert that it had violated the Sunshine Law in approving the agreement and hence the contract was void. The Court flayed the city for adopting this agreement.

> "Unhappily, this case is but another example of the utter disregard with which a government views its sacred obligations to its people. Basic morality, integrity and honesty appear to no longer have any meaning to goverments and their agencies.

The subject agreements, first verbal, and later reduced to writing and signed by all of the appropriate and necessary city officials, were honored by the city so long as it was in its interest to do so. It then sought to disavow same alleging that it had itself violated the Sunshine Law and thereby violated the agreement. There is no complaint from the city's competitor in the furnishing of electricity nor from any interested citizen. The city itself, of its own volition seeks to take refuge in its own alleged violation of law, all the while blatantly ignoring, and seeking to escape from, its moral obligations to the citizens who reside in Killearn subdivisions for whose benefits the agreements were made. A more flagrant act of dishonor can hardly be imagined. A citizen, when dealing with a government, is powerless to require that it and its officials abide by the law. Indeed, it is virtually impossible for a citizen to determine how, when or where a contract is signed or under what circumstances. In this case, as already observed, the record clearly reveals that the city's obligations were repeatedly discussed in open meetings and the manner in which the agreements were executed was never questioned nor held up to doubt. It is one thing for an aggrieved citizen to seek to have set aside an agreement between a government and another party because of Sunshine Law violations; but quite another for the governmental entity itself to seek to escape its obligations based upon its own alleged wrongdoing. It has long been recognized to be unethical for a lawyer to attack his own work product. It is at least immoral and an indication of lack of integrity for a government or its agency, whose duty it is to serve not subvert its citizens, to do the same.

The learned trial judge correctly refused to find a violation of the Sunshine Law. Even if there was a violation, under the circumstances of this case the city would be estopped to itself assert it." *Killearn*, supra.

I & R Enterprises has made the point that it was the city who chose the procedural manner in which the contract between the parties was entered into and common sense and practicality would seem to indicate that even if I & R Enterprises, Inc. would have objected to the form and procedure city chose to empower its mayor to enter into the contract, it would have made little if any difference. Judge Boyer, in *Killearn*, supra, made the same point, which bears repeating now:

"A citizen, when dealing with a government, is powerless to require that it and its officials abide by the law. Indeed, it is

virtually impossible for a citizen to determine how, when or where a contract is signed or under what circumstances."

In *City of Homestead v. Raney*, 357 So.2d 749 (3 DCA 1978) Raney was the low bidder for the construction of a swimming pool. Giving the contract to Raney was approved by motion at a council meeting. One of the councilmen objected on the grounds that it should not be awarded on an oral motion. The city manager told Raney that there was considerable controversy concerning the procedure. He advised Mr. Raney not to proceed without further authorization. The next year there was an election and the membership of the city council changed. Later the city rescinded the contract. The trial court determined that the contract came into existence and that Raney was entitled to damages under the contract although it did nothing in pursuance thereof. The city argued on appeal the contract was void because the city charter required authorization by letter, ordinance, or written resolution. The Third District held the city could not use the technicality of the direction provisions of its code to defeat the contract.

In *O.P. Corporation v. The Village of North Palm Beach*, 278 So. 2d 593 (1973 Fla.) there was an ordinance, number 20, under which the land in question was zoned single family residential. In 1959 the village enacted ordinance number 44, zoning the land to authorize the construction of apartment houses. O.P. obtained a building permit for the construction of an apartment house on the land at an estimated cost of $2,000,000.00. The village was paid and retained substantial fees for the two permits. O.P. began work on the construction and expended approximately $64,000.00. In 1970, the village sought declaratory judgment contending ordinance number 44 was invalid in that is was published only fourteen days before the hearing in which it was enacted instead of fifteen days as required by law. The Fourth District Court of Appeal, in 266 So.2d 676 held "the classic elements of estoppel existed here and the village is estopped from refusing to issue the permit." The Supreme Court agreed with the Fourth District and affirmed the application of the estoppel doctrine against the village.

Therefore the city's motion for summary judgment is denied.