Mr. Gerald T. Buhr Mulberry City Attorney 1519 Dale Mabry Highway Suite 100 Lutz, Florida 33548
Dear Mr. Buhr:
On behalf of the City of Mulberry, you ask substantially the following questions:
1. May the City of Mulberry modify the scope of a utility operations and maintenance contract to include repairs in excess of the no-bid maximums prescribed by the city's charter and by state law without seeking bids for the additional work?
2. May the city use the contractor retained under the utility operations and maintenance contract for additional capital improvement construction and repair projects in excess of the amounts prescribed in sections 180.24
and 255.20, Florida Statutes, without submitting such work for additional bidding?
As your questions are interrelated, they will be answered together.
You state that the City of Mulberry has entered into a public/private partnership with a company for the operation, maintenance and management of its water, wastewater and public works divisions.[1] Under the contract, the contractor takes over the operation of these public utility services, hires existing departmental employees, and provides other specialized personnel who are used on an as-needed basis. The contract was let as a result of a request for qualifications.
You state that section 21 of the Mulberry City Code requires that the purchase of services in excess of $25,000 be competitively bid. However, the question has been raised whether the contract can be modified to include repairs that cost in excess of the no-bid amount set forth in the charter, without additional competitive bidding.
This office has previously recognized that a municipality's home rule powers authorize it to exercise any power for municipal purposes, except when expressly prohibited by law.[2] In the absence of any statutory directive, charter provision, ordinance or rule to the contrary, the governing body may in its discretion use whatever method or procedure it deems in the best interest of the municipality to carry out municipal functions.[3] The courts of this state, moreover, have recognized that in the absence of a statute or charter provision requiring competitive bids, a municipality has no legal obligation to submit a contract to competitive bids.[4]
In this instance, you have indicated that the City of Mulberry Charter requires that the contracting of services in excess of $25,000 be awarded by a competitive bidding process. Such a provision would control the procurement of services for the repair of the municipal public works.[5]
Thus, it would appear that any amendment to the existing contract such that additional services in excess of $25,000 are rendered by the contractor would be required to be competitively bid pursuant to the requirement in the city's charter.
Section 255.20(1), Florida Statutes, in part, provides:
"A county, municipality, special district as defined in chapter 189, or other political subdivision of the state seeking to construct or improve a public building, structure, or other public construction works must competitively award to an appropriately licensed contractor each project that is estimated in accordance with generally accepted cost-accounting principles to have total construction project costs of more than $200,000."
Pertinent to the present circumstances, section 180.24, Florida Statutes, requires municipalities to publicly advertise for bids for municipal works construction contracts in excess of $25,000. As the more specific legislative direction, the provisions in section 180.24, Florida Statutes, would control over the general provisions in section 255.20(1), Florida Statutes.[6] The specific provisions of section 180.24, Florida Statutes, should be regarded as an exception to the general, broader provisions in section 255.20(1), Florida Statutes, so that both may be given effect.[7]
It should also be noted that if the construction and modification of facilities require professional services as set forth in section 287.055, Florida Statutes, the Consultants' Competitive Negotiation Act (CCNA), the city may be subject to any applicable competitive negotiation or other requirements contained therein.[8] The CCNA sets forth requirements for procuring and contracting for professional architectural, engineering, landscape architectural, or land surveying services.[9] Under the act, an agency, including a municipality, must competitively select and negotiate with the most qualified firm to provide these professional services for a project.[10]
You have cited provisions in the contract that contemplate expansion of the scope of the services, as well as the construction of capital projects by the contractor, without requiring further competitive bids. The city, however, by contract may not alter the requirements of the city's charter, nor avoid statutorily mandated competitive bidding for capital projects exceeding prescribed limits.[11]
Accordingly, it is my opinion that the City of Mulberry may not modify a utility operations and maintenance contract to include repairs and capital improvements in excess of the no-bid maximums prescribed by the city's charter and by state law without seeking bids for the additional work.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] Section 12.1, Agreement for Operations, Maintenance and Management Services, provides for an initial term of 20 years, with automatic renewals for successive terms of one year each, unless canceled in writing by either party no less than 120 days prior to expiration of the term.
[2] See, Ops. Att'y Gen. Fla. 98-04 (1998) and 96-16 (1996).
[3] See, e.g., Op. Att'y Gen. Fla. 82-76 (1982) (absent city charter provision requiring the use of certain procedures for the sale of surplus property, governing body may use discretion in choosing method of disposition in best interest of the city).
[4] See, Brown v. City of St. Petersburg, 153 So. 140 (Fla. 1933); andsee, Volume Services Division of Interstate United Corporation v. CanteenCorporation, 369 So.2d 391 (Fla.2d DCA 1979) (absent specific constitutional or statutory requirements, public agency has no obligation to establish a bidding procedure and may contract in any manner not arbitrary or capricious).
[5] Cf., Op. Att'y Gen. Fla. 82-76 (1982), supra.
[6] See, Villery v. Florida Parole and Probation Commission,396 So.2d 1107, 1108 (Fla. 1980) (court must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another); State ex rel. City of Casselberry v. Mager,356 So.2d 267, 268 (Fla. 1978) (statute should be interpreted to give effect to every clause in it and to accord meaning and harmony to all of its parts). See also, Woodgate Development Corporation v. HamiltonInvestment Trust, 351 So.2d 14 (Fla. 1977) (where possible, court's duty is to adopt construction of statutory provisions which harmonize and reconcile provisions of same act).
[7] See, Op. Att'y Gen. Fla. 83-15 (1983); 82 C.J.S. Statutes s. 347(b). Cf., Op. Att'y Gen. Fla. 73-250 (1973) (specific provisions in body of act clearly expressing legislative intent control over a clause in the act that conflicts with such intent).
[8] Section 287.055(2)(b), Fla. Stat., defines "[a]gency" to mean "the state, a state agency, a municipality, a political subdivision, a school district, or a school board."
[9] Section 287.055(2)(a), Fla. Stat.
[10] Section 287.055(4) and (5), Fla. Stat.
[11] See, Ops. Att'y Gen. Fla. 92-35 (1992) (contract may not expand or limit statutorily prescribed powers and duties) and 92-69 (1992) (city pension board could not relinquish its authority in any area under its enabling act to another governmental entity pursuant to contract).