658 So.2d 577 (1995)
PALM BEACH COUNTY HEALTH CARE DISTRICT, Appellant/Appellee,
v.
EVERGLADES MEMORIAL HOSPITAL, INC., a Florida not-for-profit corporation, Appellee/Appellant.
v.
Doris AUSBROOK, Executive Director and Records Custodian of the Palm Beach County Health Care Taxing District, Appellee.
Nos. 94-0164, 94-0167.
District Court of Appeal of Florida, Fourth District.
July 5, 1995.
Rehearing, Rehearing, and Certification Denied August 28, 1995.
*578 Karen Kantner of Fine Jacobson Schwartz Nash & Block, Henry Latimer (formerly of Fine Jacobson) and Anthony J. Carriuolo of Eckert Seamans Cherin & Mellott, Fort Lauderdale, for appellant/appellee  Palm Beach County Health Care Dist.
David A. Acton of Watterson, Hyland, Baird & Klett, P.A., Palm Beach Gardens, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellee/appellant  Everglades Memorial Hosp., Inc.
Rehearing, Rehearing En Banc, and Certification Denied August 28, 1995.
STONE, Judge.
In these consolidated appeals, Palm Beach County Health Care District (Palm Beach District) and Everglades Memorial Hospital, Inc. (EMH), appeal from the same final judgment incorporating summary final judgments as to each.
The appeal essentially concerns the future of the Everglades Memorial Hospital (Everglades Hospital), a public hospital located in Pahokee, Florida. Everglades Hospital was previously operated by the Northwestern Palm Beach County Hospital Board, a public hospital taxing district (Northwestern District).
In 1982, the Florida legislature enacted section 155.40, Florida Statutes, authorizing public hospital taxing districts throughout the state to reorganize as not-for-profit Florida corporations. This statute also allowed the hospitals to enter into contracts and/or leases with other not-for-profit corporations for the purpose of operating hospital facilities.
In 1986, the Northwestern District, acting pursuant to section 155.40, "reorganized" the Everglades Hospital. The non-profit corporation was not created by the Northwestern District. Rather, the Northwestern District directors independently formed, and became the initial board of EMH, a not-for-profit corporation. Immediately thereafter, the Northwestern District and EMH entered into a lease agreement and a "financial support agreement."
Pursuant to the lease, EMH agreed to pay rental payments for 40 years, after which the hospital facilities would be returned to the Northwestern District. The lease also contained a purchase option, which could be exercised upon the expiration of the lease, for $100.00 conditioned upon an opinion from independent legal counsel that the lessor had the authority to convey the hospital facilities to the lessee. Pursuant to the financial support agreement, EMH agreed to provide hospital and medical care to all residents, regardless of ability to pay. The Northwestern District agreed to provide, contribute, reimburse, and pay for various services, facilities and expenses, and the Northwestern District agreed to extensive financial obligations of reimbursement. The documents also provide that the 40 year term would be automatically extended for one year at the end of the first year and each anniversary thereafter, unless terminated in writing prior to such anniversary date, effectively extending the arrangement indefinitely unless 40 years notice is given.
In 1987, the Florida legislature created the Palm Beach County Health Care District (Palm Beach District and/or the district). The district, pursuant to the act, took over the assets, liabilities, and certain functions of the pre-existing hospital districts. These hospital districts were then converted into subdistricts. The legislature, in chapter 87-450, which created the Palm Beach County Health Care District, also recognized the authority of the subdistricts to reorganize pursuant to section 155.40, Florida Statutes, and specifically provided that the Palm Beach District's interests were subject to any agreements and obligations approved and entered into by the pre-existing district.
*579 There is no longer any interlocking relationship between membership on the district board and the EMH board. In 1991, the Palm Beach District determined that the existing operation of Everglades Hospital and Belle Glade's hospital was inefficient and decided that it was in the public interest to form a new not-for-profit hospital corporation at the Glades General site and that EMH's in-patient services be relocated to the new hospital. In accordance with this plan, Palm Beach District passed a resolution directing the administration to take steps to invalidate the previous transfer of Everglades Memorial Hospital to a not-for-profit corporation, to declare the transfer void, and to terminate contracts pertaining to operation of the hospital and otherwise assert the district's control over Everglades Memorial Hospital. To this effect, a letter was sent to the EMH board of directors directing the employees and board of directors of EMH to cease making certain expenditures without authorization and otherwise terminated the authority of the board with respect to extraordinary expenditures. At the same time, the Palm Beach District filed a declaratory judgment action indicating that it was uncertain as to its rights with regard to this matter.
EMH then filed a complaint seeking declaratory relief and damages for breach of contract and anticipatory breach of contract. The district thereafter filed a counterclaim seeking declaratory relief.
The trial court, in granting, in part, both parties' motions for summary judgment, determined that the reorganization, the lease, and the financial support agreement were valid as authorized by section 155.40 except for the option to purchase provision contained in the lease. With respect to the option to purchase provision, the court held that its invalidity did not render the balance of the lease unenforceable because under the terms of the lease, it was severable and the invalidity of one provision did not affect the invalidity of the balance.
Section 155.40, Florida Statutes, provides, in relevant part:
Reorganization of county, district, or municipal hospital as a not-for-profit corporation.
(1) [A]ny county, district, or municipal hospital . .. shall have the authority to reorganize such hospital as a not-for-profit Florida corporation, and enter into contracts with not-for-profit Florida corporations for the purpose of operating and managing such hospital and any or all of its facilities of whatsoever kind and nature; to enter into leases with a not-for-profit Florida corporation for the operating of such facilities so existing....
(2) Any such lease, contract, or agreement made pursuant hereto shall:
* * * * * *
(c) Provide for the orderly transition of such facilities to not-for-profit corporation status;
(d) Provide for the return of such facility to the county, municipality, or district upon the termination of such agreement or the dissolution of such not-for-profit corporation;
* * * * * *
(3) The articles of incorporation of such not-for-profit corporation may provide for the abolishment of the existing governing board of the hospital and the establishment of a new board.
§ 155.40, Fla. Stat. (1993).
Palm Beach District claims that the lease and financial support agreement are invalid because of the extent of the divestment of public property. Moreover, they argue that the extent of power and authority given to the not-for-profit corporation goes beyond that authorized by the statute. See Jess Parrish Memorial Hosp., Inc. v. City of Titusville, 506 So.2d 22 (Fla. 5th DCA 1987).
In Jess Parrish, a transfer of a hospital to a not-for-profit corporation under the authority of section 155.40 was held void as exceeding the authority granted under the section, as that statute did not authorize the divestment of title to land by the district. Here, the trial court determined that Jess Parrish was applicable with respect to the provisions in the lease providing for the lessee's right to purchase at the expiration of the lease for $100.00, notwithstanding that the document in this case purports to be a lease rather *580 than a transfer of assets, because it was the equivalent of the divestment that occurred in Jess Parrish, and therefore not authorized by the statute. We do note, however, that in Jess Parrish, although the deed was rescinded and title transferred back to the district, the court did not hold the balance of the reorganization void.
Palm Beach District asserts that the lease and financial support agreement go beyond the authorization of section 155.40 because this reorganization was effectively, although not in name, a dissolution of the sub-district itself.[1]
We have reviewed the lease and financial support agreement and conclude that the trial court erred in determining that those documents constitute a valid reorganization under the statutory scheme. The lease and agreement fail to reserve sufficient control in the public authority. See O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). The lease and financial support agreement constitute an unconstitutional application of section 155.40 by placing the hospital effectively beyond public control. Although section 155 authorizes operation and management of district hospitals by not-for-profit corporations, and authorizes leases and agreements for the operation of a hospital, it does not authorize the delegating of district powers and duties, and, the extent of divestment of public power to the extent provided here. See § 155.40, Fla. Stat. (1993).
Although section 155.40 provides that a district may reorganize a hospital entity for the purpose of operating and managing the hospital, it does not authorize relinquishing to an independent private board effective unfettered control over public property, powers, taxing authority, and money, including expenditure of ad valorem taxes without public oversight or accountability.
Here, the district essentially pledged public funds to the non-governmental entity, without provision for insuring operations and expenditure in the public interest. Not only does the private hospital board have substantial autonomy concerning decisions affecting the operation of the hospital, but the district is obligated to pay the hospital from ad valorem taxes based upon rates charged and expenses incurred by the hospital over which the district has no ultimate influence. There is not even a provision for effective review by district commissioners notwithstanding that the funds used to make up any hospital deficit are derived from ad valorem taxation. As a result, the district is powerless to respond to the public interest and is effectively a mere funding mechanism for the non-profit corporation.
We emphasize that this is not a scheme under which accountable public officials sitting as members of the private hospital board would have effective control over decisions affecting the obligation of public monies. Here the independent private hospital board is self-perpetuating without regard to whether its membership includes district board representation. The district must pay the private corporation public money for a period of at least 40 years with virtually no input, control or accountability by or to the public. Further, the public is powerless to remove the persons making the decisions. Such a surrender of public responsibility is invalid. See City of Belleview v. Belleview Fire Fighters, Inc., 367 So.2d 1086, 1088 (Fla. 1st DCA 1979) (citing Hartnett v. Austin, 93 So.2d 86 (Fla. 1956)). Compare Housing Authority of the City of Melbourne v. Richardson, 196 So.2d 489 (Fla. 4th DCA 1967).
We also conclude that the lease and financial support agreement did not constitute a "reorganization" as contemplated under the statutory scheme. A statute must be construed to give effect to the plain meaning of its words. Thayer v. State, 335 So.2d 815 (Fla. 1976). Certainly if the legislature intended to authorize such a radical and complete divesture of public assets, control oversight, and authority, it would be clearly stated. There is no reason not to construe the statute as contemplating a "reorganization" involving the membership of the district *581 board. Under such a reorganization, the public would retain control through the accountability of public officials, albeit sitting in a dual capacity.
Agreements entered into by public bodies which fail to comply with statutory requirements are void. Cf. Cook v. Navy Point, Inc., 88 So.2d 532 (Fla. 1956). Therefore, we hold the lease and financial support agreement here invalid and the trial court's order is reversed.
The additional issues raised concerning review of a separate order in this consolidated appeal are now moot.
DELL and POLEN, JJ., concur.
NOTES
[1] The district also argues that section 165.051, Florida Statutes, provides that the charter of an existing special district may only be revoked or dissolved by special act of the legislature. However, we need not resolve that argument which is moot.