GUNTHER, J.
The issues in this case concern whether a lease between the Indian River County Hospital District (“the District”) and Indian River Memorial Hospital, Inc. (“IRMH, Inc.”), a private nonprofit corporation, is invalid because the District does not retain sufficient control over IRMH, Inc., as required by Florida law. We affirm the trial court’s conclusion that the lease is valid and reverse only that aspect of the case involving the question of whether there was a Sunshine Law violation.
The District is a public hospital taxing district created by the Florida Legislature. See Ch. 61-2275, Laws of Fla. Health care was provided through publicly owned hospital facilities for many years under the District’s governance.
. In the early 1980s, the Florida Legislature authorized public hospital taxing districts to reorganize as nonprofit corporations or enter into contracts with nonprofit corporations for the purpose of operating hospital facilities. See Ch. 82-147 §§ 8-4 (codified as amended at § 155.40, Fla. Stat. (1999)). District trustees selected several citizens of Indian River County who incorporated IRMH, Inc., a private *234 nonprofit corporation. Those same citizens then became the original board of directors of IRMH, Inc. The District entered into a twenty-six year lease with IRMH, Inc. through which the District leased all real property, existing hospital facilities, and equipment to IRMH, Inc. Operation and management responsibility of the hospital was also transferred to IRMH, Inc. As rent, the lease requires IRMH, Inc. to pay all of the District’s debt service requirements related to the construction, addition to, renovation of, or replacement of the hospital facilities. At the termination of the lease in 2010, all property, including intangible assets, will revert to the District.
Incorporated into the lease is an agreement between the parties entitled the Indigent Care Agreement. Under the terms of the Indigent Care Agreement, IRMH, Inc. must discharge the District’s statutory obligation to provide medical and health care to indigent residents. In return, the District pays IRMH, Inc.’s costs in providing indigent care services. It appears that the cost associated with indigent care services is the only funding the District provides to IRMH, Inc.
The original Indigent Care Agreement allowed IRMH, Inc. to annually decide the amount of money the District would pay in indigent care services. Pursuant to a provision of the Indigent Care Agreement that allows for “periodic confirmation and re-negotiation,” however, the parties executed several amendments to the Agreement. The amendments contain language indicating that each amendment was a re-execution of the Indigent Care Agreement as a whole and completely subsumed any prior agreements. Under the sixth amendment, which appears to be the latest agreement between the parties, the parties agreed that the District would annually pay an amount of money to “fairly and adequately compensate” IRMH, Inc. for providing health care to indigent patients. Such payment “shall not be deemed to constitute a lien or claim upon the tax revenues of [the] District or obligate [the] District to levy a tax.” At the' end of each year, IRMH, Inc. must provide the District with a copy of its audited financial statement, a “complete report ... of all charges to and collections from indigents ... and third party payors,” and “complete and accurate records regarding the services provided to indigent residents ... and the qualifications of that individual as an indigent.” This information is not for the purpose of adjusting the amount already paid for indigent care, but rather for the purpose of “determining the amount of future appropriations of money to compensate” IRMH, Inc. for indigent care services. In fact, the record indicates that at the time of trial, indigent care costs exceeded $7 million annually, but the District paid only $2.7 million.
In 1996, several people with concerns about the management of the hospital were elected to the District’s board of trustees. The parties began disputing the validity of the lease, the terms of the lease, and the powers and responsibilities of the parties under the lease. The District filed a multi-count declaratory complaint against IRMH, Inc. and its subsidiaries, seeking to have the lease declared void and alleging past violations of the Sunshine Law and the Public Records Act. IRMH, Inc. and its subsidiaries filed a multi-count declaratory counterclaim, requesting, inter alia, a declaration that the lease was valid and did not require them to comply with the Sunshine Law and Public Records Act.
Finding that the District retained sufficient control over IRMH, Inc. and that the lease did not violate the Florida Constitution, the trial court ruled the lease was valid. The trial court found that the lease required IRMH, Inc. to comply with section 286.011(8), Florida Statutes (the Sunshine Law) and section 119.07(1) (the Public Records Act). It appears that the trial court also found, however, that the recent enactment of section 895.8036, Florida Statutes (1999), exempted IRMH, Inc. *235 from compliance with the Sunshine Law and the Public Records Act. The trial court ordered each party to bear its own attorney’s fees and costs. The District now appeals.
We reverse the trial court’s decision that each party should bear its own attorney’s fees and costs. IRMH, Inc. admitted and the trial court found IRMH, Inc. to have committed several violations of the Sunshine Law prior to the enactment of section 395.3036. When a trial court finds a public authority has violated the Sunshine Law, “the court shall assess a reasonable attorney’s fee against such agency.” § 286.011(4), Fla. Stat. (1999). Thus, even though we appreciate the trial court’s sentiment that the “fairest resolution” is for each party to bear its own attorney’s fees because both parties are public entities, section 286.011(4) requires attorney’s fees to be assessed against IRMH, Inc. Accordingly, we reverse that portion of the trial court’s judgment requiring the parties to bear their own attorney’s fees and remand this case for an award of reasonable attorney’s fees in the District’s favor pursuant to section 286.011(4).
In all other respects, we affirm the trial court’s order. We agree with the trial court’s determination that the lease in this case is valid, but we write to address the misconception that hospital districts are prohibited from entering into these types of leases with managing corporations. In this case, the notion underlying the District’s various contentions is that the lease divests it of adequate control over IRMH, Inc. Contrary to the District’s concerns, leases of this nature are not only allowed under current law, but they are being aggressively encouraged by the Florida Legislature. The District contends its lease violates public policy, but it is actually in furtherance of public policy. Viewing the history of the legislation in this area in context elucidates this point.
In 1982, the Florida Legislature enacted section 155.40, which authorized the leasing of public hospitals to nonprofit entities to allow them to compete with for-profit hospitals while providing citizens with quality health care. See Ch. 82-147 §§ 3-4, Laws of Fla. (codified as later amended at § 155.40, Fla. Stat. (1999)); Memorial Hosp.-W. Volusia, Inc. v. News-Journal Corp., 729 So.2d 373, 385 (Fla.1999)(Overton, J., dissenting). While allowing public hospital districts to lease their facilities, section 155.40(2) required the hospital districts to retain some control over the managing corporation. To that end, section 155.40(2) required the lease to provide that the managing corporation’s articles of incorporation be subject to the hospital district’s approval; to require that the managing corporation maintain section 501(c)(3) tax-exempt status; to provide for the orderly transition of the hospital facilities to the managing corporation; and to provide for the return of the hospital facilities to the hospital district at the end of the lease. See Ch. 82-147 § 4, Laws of Fla. (codified as later amended at § 155.40(2)(a)-(d), Fla. Stat. (1999)). In 1984, section 155.40(2) was amended to require that the lease also provide for the continued treatment of indigent patients. See Ch. 84-98 § 1, Laws of Fla. (codified as later amended at § 155.40(2)(e), Fla. Stat. (1999)).
Section 155.40 was first criticized for its lack of public accountability and oversight in Jess Parrish Memorial Hospital, Inc. v. City of Titusville, 506 So.2d 22 (Fla. 5th DCA 1987)(hereinafter “Jess Parrish”). See Fla. S. Comm. on Health Care, CS for SB 2392 (1996) Staff Analysis 4 (Apr. 2, 1996). Although not at issue in that case, the trial court declared section 155.40 unconstitutional, finding it “unlawfully delegates legislative powers to a District Board without sufficient guidelines, it is void for vagueness, it allows the transfer of public property contrary to public policy and referendum, and it allows the use of public assets in violation of Article VII Section 10, Florida Constitution.” Jess *236 Parrish, 506 So.2d at 24. The Fifth District declined to rule on the constitutionality of section 155.40, affirming the trial court’s order on other grounds. See id.
In 1995, section 155.40 again came under fire in Palm Beach County Health Care District v. Everglades Memorial Hospital, Inc., 658 So.2d 577 (Fla. 4th DCA 1995)(hereinafter “Everglades Memorial ”). In Everglades Memorial, the hospital district and a managing corporation had entered into a forty year lease that could never be terminated and that contained a purchase option provision obligating the district to sell the hospital facilities to the managing corporation at the end of the lease for $100. See id. at 578. The lease also gave the managing corporation “substantial autonomy” over the hospital’s management while the hospital district was “obligated to pay the hospital from ad valorem taxes based upon rates charged and expenses incurred by the hospital over which the district has no ultimate influence.” Id. at 580. Noting that the hospital district was “powerless to respond to the public interest” and was “a mere funding mechanism” for the managing corporation, this Court found that the lease violated section 155.40 and thus invalidated the lease. Id.
After the. Everglades Memorial decision, many public hospitals that had previously entered into leases under section 155.40 became concerned that their lease or reorganization agreement was invalid. See Fla. S. Comm. on Health Care, CS for SB 2392 (1996) Staff Analysis 5 (Apr. 2, 1996). The concern was that their existing lease or reorganization agreement was void if the hospital district lacked some degree of control over how much public money it uses to fund hospital operations and what types of things it funds. See O’Neill v. Burns, 198 So.2d 1 (Fla.1967), cited in Everglades Memorial, 658 So.2d at 580. How much control Everglades Memorial required was uncertain.
To respond to these concerns — or, more specifically, to respond to the Jess Parrish and Everglades Memorial opinions — the Florida Legislature amended section 155.40. First, the legislature amended section 155.40 to provide for the sale of publicly owned hospitals as well as for the lease of hospital facilities. See Ch. 96-304 § 1, Laws of Fla.; Fla. H.R. Comm, on Health Care, CS for HB 965 (1996) Staff Analysis 1 (May 17, 1996). The legislature also added subsection (5) in an attempt to define how much control a hospital district must retain over a managing corporation if the hospital district leases the hospital facilities instead of selling them. Subsection (5) provides that when a managing corporation receives more than $100,000 annually from a hospital district, the revenue must either be subject to annual appropriations, or in the alternative, if there is a contract for services longer than twelve months, the hospital district must be able to modify the contract upon twelve months notice to the hospital. See Ch. 96-304 § 1, Laws of Fla. (codified at § 155.40(5)(a)-(b), Fla. Stat. (1999)).
The legislature intended subsection - (5) to have “both retroactive as well as prospective effect.” See Fla. H.R. Comm, on Health Care, CS for HB 965 (1996) Staff Analysis 1 (May 17, 1996). Legislative history specifically states that subsection (5) “shall not be interpreted to impose additional requirements beyond the requirements created under subsection 155.40(2).” See Fla. S. Comm. on Health Care, CS for SB 2392 (1996) Staff Analysis 6 (Apr. 2, 1996). To that end, the legislature also added the following language:
(3) Any sale, lease, or contract entered into pursuant to this section prior to the effective date of this act must have complied with the requirements of subsection (2) in effect at the time of the sale, lease, or contract. It is the intent of the Legislature that this section does not impose any further requirements with respect to the formation of any for-profit or not-for-profit Florida corporation, the composition of the board of directors of any Florida corporation, or *237 the manner in which control of the hospital is transferred to the Florida corporation.
Ch. 96-304 § 2, Laws of Fla. (codified at § 155.40(3), Fla. Stat. (1999)). Thus, subsection (3) was intended to allay the fears of parties to existing management agreements that if their agreement complied with section 155.40(2) prior to the addition of subsection (5), then the lease agreement would remain valid. Id.
In 1998, the Florida Legislature recognized that private nonprofit managing corporations had entered into leases with public hospital districts in reliance upon prevailing case law that they were not “acting on behalf of’ public hospital districts and therefore were not subject to the Sunshine Law or the Public Records Act so long as the hospital districts did not retain control over them. See Ch. 98-330 § 2, Laws of Fla. The legislature expressed concern that a recent appellate decision, News-Journal Corp. v. Memorial Hospital-West Volusia 695 So.2d 418, 420 (Fla. 5th DCA 1997), aff'd, 729 So.2d 373 (Fla.1999), changed that standard by ruling that in a. “broad general sense,” the private managing corporation was “acting on behalf of’ the hospital district by fulfilling the district’s responsibility to provide hospital services to its citizens and therefore was subject to public records disclosure. The legislature found that this appellate decision created uncertainty with respect to whether a private managing corporation is subject to the Sunshine Law and the Public Records Act. See Ch. 98-330 § 2, Laws of Fla. The legislature further found it was a “public necessity” for it to clarify when the • public records and public meeting laws applied to private lessees of public health care facilities. See id.
For these reasons, the legislature enacted section 395.3036, Florida Statutes, which specifically provides that the records and meetings of corporations that lease public hospitals and health care facilities are confidential and exempt from the provisions of the Public Records Act, the Sunshine Law, and article 1, sections 24(a) and (b) of the Florida Constitution, so long as the lessee corporation and the public hospital district are sufficiently distinct entities, as indicated by certain statutory criteria. See Ch. 98-330 § 1, Laws- -of Fla. (codified at § 395.3036, Fla. Stat. (1999)). The legislature specifically provided that section 395.3036 would take effect on May 30,1998, and “shall apply to existing leases and future leases” between hospital districts and private managing corporations. See Ch. 98-330 § 4, Laws of Fla.
In 1999, the Florida Supreme Court decided Memorial Hospital-West Volusia, Inc. v. News-Journal Corp., 729 So.2d 373 (Fla.1999), approving the Fifth District’s opinion. It appears the Florida Supreme Court determined that at the time the requests for records and access to meetings were made in that case — which was prior to the effective date of section 395.3036 — the private lessee corporation was subject to article I, section (a) and (b) of the Florida Constitution, the constitutional counterparts to. the Sunshine Law and the Public Records Act. See id. at 384. The supreme court rejected the argument that requiring the private lessee corporation to provide public records access and meeting access would frustrate the legislature purpose of section 155.40. See id. at 380. The supreme court noted that section 155.40 did not contain an express exemption from public records' access and that it would not imply an exemption. See id. Only after the legislature provided by general law for the exemption of records, stating with specificity the public necessity for the exemption and providing that the law was no broader than necessary, would an exemption from public records access be available. See id. at 380, 388 n. 14.
In response to the Florida Supreme Court’s decision in Memorial Hospital-West Volusia, the Florida Legislature amended section 155.40, to specifically- provide that unless otherwise expressly stated in the ■ lease documents, the • transaction *238 involving the lease of a hospital shall not be construed as a transfer of a government function to the private lessee corporation, as the public hospital district having a financial interest in the private lessee corporation, or as making the private lessee corporation an integral part of the hospital district’s decision-making process. See Ch. 99-356 § 6, Laws of Fla. (codified at § 155.40(6), Fla. Stat. (1999)). The legislature also amended section 155.40 to provide that any private lessee corporation operating under a lease for the management of a hospital district shall not be construed as “acting on behalf of’ the hospital district. See Ch. 99-356 § 6, Laws of Fla. (codified at § 155.40(7), Fla. Stat. (1999)).
The Florida Legislature has recognized that public hospitals must be able to privatize in order to retain and attract revenue sources and compete with for-profit hospitals. The Florida Legislature has also recognized that in order to compete with profit-making hospitals, private nonprofit corporations managing public hospitals need to be able to keep their meetings and records confidential and not make public disclosure of contracts and partnerships for out-patient services and clinics, just as their profit-making counterparts can. As demonstrated by their actions, the legislature seeks to encourage privatization in order to ensure the continued viability of nonprofit hospitals and the availability of quality health care to the public. See Fla. H.R. Comm. on Health Care, CS for HB 965 (1996) Staff Analysis 2-5 (May 17, 1996); Memorial Hosp.-W. Volusia, Inc., 729 So.2d at 385 (Overton, J., dissenting). Leases of the sort executed between the parties in this case are in furtherance of this stated public policy.
Here, the current agreement between the parties — which they have recently re-executed and re-affirmed to the exclusion of all prior agreements — provides the District has sufficient control. The District was required to approve the articles of incorporation and bylaws of IRMH, Inc. and must approve any amendments. The District appoints three of the thirteen members of the board of directors of IRMH, Inc., and a District board member serves as one of the three members of the finance committee of IRMH, Inc., which controls the budget of IRMH, Inc. The District may remove an IRMH, Inc. board member who repeatedly acts in a manner inconsistent with the public purpose for which the District was created. IRMH, Inc. expenditures for alterations and improvements which exceed $500,000 must be approved by the District. IRMH, Inc. cannot transfer any of its rights or encumber its leasehold interest without approval of the District, and it must remain a charitable corporation.
The District independently determines how much it will pay each year to IRMH, Inc. for indigent care services. The District appropriates only a certain amount of money to IRMH, Inc. without regard to how much IRMH, Inc. charges for each individual service, which forces IRMH, Inc. to either lower its costs or take up the slack. IRMH, Inc. is required to operate a full-service hospital providing a level and variety of major services at least equal to those being offered at the time of the lease, or obtain permission from the District to discontinue such a service. Given these controls, the lease in this case complies with section 155.40 and Everglades Memorial.
In sum, we reverse that portion of the trial court’s order requiring the parties to bear their own attorney’s fees and remand for entry of attorney’s fees in the District’s favor pursuant to section 286.011(4). In all other respects, we affirm.
AFFIRMED in part; REVERSED in part; and REMANDED.
KLEIN and STEVENSON, JJ., concur.